IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARTURO OROZCO JR., R25704, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 25-cv-1329-DWD |
| DEANNA M. BROOKHART, JOHN DOE 1, LT. PIPER, JOHN DOE 3, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Arturo Orozco Jr., an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Plaintiff alleges that Defendant John Doe 1 created a danger to him by branding him as a snitch in the presence of other inmates, and Defendants Brookhart, Piper and John Doe 3 failed to protect him from a subsequent attack. He also alleges that Brookhart prevented him from receiving adequate medical care after the attack, instead allowing him to be transferred to another prison.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion

of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on December 10, 2023, Defendant John Doe 1 entered the restrictive housing unit, approached Plaintiff's cell, and spoke loudly to him about Plaintiff's obligation to go to the healthcare unit to speak with Defendant Piper. Plaintiff alleges that John Doe 1's conduct was problematic because he loudly and clearly announced that Plaintiff was going to talk to Piper about gang intelligence matters, which caused other inmates to label him as a snitch. (Doc. 1 at 7). Once labeled as a snitch, Plaintiff alleges he immediately began to receive threats from other inmates.

Plaintiff alleges that on the night of December 10 or on December 11, 2023, he submitted an emergency grievance about the threats he was receiving. He faults Defendant Brookhart for ignoring his detailed grievance that explained he would be assaulted by several inmates and failing to act to move him to a safe location. (Doc. 1 at 6). He alleges that instead of being moved to a safe location, on December 14, 2023, he was released to the general population area of the prison. (Doc. 1 at 7). Plaintiff explains that upon arrival at the seven house, he saw John Doe 1.

On December 15, 2023, Plaintiff was brutally attacked by two inmates while attending prison yard. (Doc. 1 at 7-8). He alleges the inmates punched, kicked, and

stomped on him.  He sustained lacerations and bruises on his head and face, and broke both bones in his left forearm.  He continues to suffer severe migraines.  Plaintiff alleges that during the attack John Doe 3 was working in the gun tower, but failed to do anything to stop the attack, such as firing warning shots.  (Doc. 1 at 8-9).  Instead, he alleges John Doe 3 must have ignored the yard.  (Doc. 1 at 8).

Ultimately, non-party officers entered the yard and broke up the fight.  (Doc. 1 at 9).  Plaintiff was taken to an outside hospital where it was advised that he remain over the weekend until he could undergo surgery on Monday, but he claims that despite the specialist's recommendation that he remain hospitalized, Defendant Brookhart demanded that he be returned to the prison.  His broken arm was placed in a makeshift splint, and he was returned to the prison's infirmary.  (Doc. 1 at 9).  Plaintiff alleges he suffered from extreme pain during his return to the prison.  The following day, he was transferred to Menard.  Plaintiff alleges that Defendant Brookhart knowingly interfered with his access to the surgery recommended by specialists, and delayed his access to care, ultimately worsening his prognosis.  (Doc. 1 at 10).  Plaintiff claims that due to the delay he ultimately needed two complex surgeries, and his wrist was not able to be repaired to normal function.

Plaintiff claims that the Defendants subjected him to the foregoing events for two reasons.  First, he alleges that he is wrongfully convicted of a murder of a victim who is related to correctional officers.  (Doc. 1 at 10).  Second, he alleges that earlier in December of 2023, he filed a grievance against an officer and sought the preservation of related

video footage. He claims that the Defendants in this case retaliated against him for the early December 2023 grievance by allowing the attack on December 15, 2023.

Finally, Plaintiff alleges that as of June 3, 2025, he has been returned to Lawrence where he believes he faces an imminent danger of more serious physical harm from inmates and staff alike. (Doc. 1 at 10-11). Plaintiff states that he would like appointed counsel due to the imminent danger he faces. (Doc. 1 at 11). In the demand for relief, Plaintiff also seeks monetary compensation for his injuries. (Doc. 1 at 12).

Based on the allegations in the Complaint the Court designates the following counts:

> **Claim 1:** **Eighth Amendment deliberate indifference or failure to protect claim against Defendants John Doe 1 and/or Piper for labeling Plaintiff as a snitch in the presence of other inmates, and thus creating the danger of the assault;**
>
> **Claim 2:** **Eighth Amendment failure to protect claim against Defendant Brookhart failing to prevent the December 15, 2023, assault;**
>
> **Claim 3:** **Eighth Amendment failure to intervene claim against Defendant John Doe 3 for his/her conduct in the yard gun tower during the assault on December 15, 2023;**
>
> **Claim 4:** **Eighth Amendment deliberate indifference claim against Defendant Brookhart for interfering with Plaintiff's access to timely medical care as recommended by a specialist in December of 2023;**
>
> **Claim 5:** **First Amendment retaliation claim against all Defendants for their role in allowing the December 15, 2023 attack.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Negligence is not enough to support a deliberate indifference claim. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

A plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010); *see also Saunders v. Tourville*, 97 Fed. App'x 648, 649 (7th Cir. 2004) (finding that an inmate failed to state a failure to protect claim for being labeled as a snitch where he did not identify any physical harm that occurred, and instead simply

stated he was at risk of physical harm). A general risk of harm is not sufficient, an inmate must demonstrate that he alerted staff to a specific risk. *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). A prison official who intentionally or with reckless indifference exposes an inmate to psychological harm or a heightened risk of future injury may be liable, even if no attack occurred. *See Wright v. Miller*, 561 Fed. Appx. 551, 555 (7th Cir. 2014) (*citing Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (concluding that guard's alleged attempts to induce other inmates to assault plaintiff prisoner "posed a substantial risk of serious harm to [the prisoner's] future health")).

Here, Plaintiff asserts that on December 10, 2023, John Doe 1 spoke loudly in the cellhouse about Plaintiff being summoned to the medical unit to speak to Defendant Piper about gang intelligence. Plaintiff alleges that this caused him to immediately be labeled as a snitch amongst fellow inmates, and it led to threats of violence. At this preliminary stage, the assertions are sufficient to support an Eighth Amendment claim against Defendant John Doe 1 for knowingly creating a dangerous situation for Plaintiff by loudly announcing information that may lead to an obvious threat to Plaintiff's safety. However, Plaintiff's allegations are not sufficient to proceed against Defendant Piper because Plaintiff does not say anything to plausibly suggest Piper knew about John Doe 1's conduct, or had any role in directing it. Section 1983 liability is dependent on the personal knowledge and involvement of a defendant. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused

or participated in a constitutional deprivation."). Plaintiff has not said enough to personally connect Piper, so Claim 1 will proceed against John Doe 1, but it will be dismissed as insufficient against Piper.

In Claim 2, Plaintiff alleges that he informed Defendant Brookhart of a specific and detailed risk to his safety via emergency grievance. Rather than receiving any sort of response, Plaintiff alleges he was simply returned to general population approximately four or five days after he filed the grievance. He implies that this means Brookhart intentionally overlooked the issue or refused to act by alleging that she ignored him, but he does not have much support for this conclusory assertion. For example, he does not allege Brookhart denied his grievance emergency status, or that she participated in housing placement decisions, such as his move from restrictive housing to general population. Without alleging what sort of response the grievance received, Plaintiff has not yet plausibly established that Brookhart knew of and intentionally disregarded his situation. He also has not alleged that Brookhart had any personal role in his housing relocation from restrictive housing to general population. Without more detail, the allegations against Brookhart are insufficient to proceed.

Claim 3 alleges that John Doe 3, the prison employee working the gun tower on December 15, 2023, during the attack, failed to protect Plaintiff. There is no indication that John Doe 3 had knowledge of a risk before yard began on that day, thus this claim is better considered under a theory of failure to intervene than it is under a theory of failure to protect. A prison employee may be liable for failing to intervene in an inmate-on-inmate attack if he or she is aware of an assault but fails to take reasonable action to

intervene. *Eddmonds v. Walker*, 317 Fed. App'x 556, 558-59 (7th Cir. 2009). An inmate must establish more than just negligence, he must show that prison officials were aware of a substantial risk of serious injury but failed to take appropriate steps to respond. *Id. at 558*. A guard is not expected to immediately insert themselves into a physical altercation, risking their own safety, but they must at least take reasonable action. *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007). Here, Plaintiff asserts that John Doe 3 was not paying attention and did not fire warning shots, instead leaving a resolution of the fight to other staff members. The problem with these assertions is that at most, they amount to negligence on behalf of John Doe 3, rather than knowing and intentional indifference. Plaintiff's assertions about John Doe 3 are speculative and overlook the possibility that John Doe 3 may have summoned the guards who physically responded. Thus, on the scant assertions available, Plaintiff has not pled a sufficient failure to intervene claim against John Doe 3.

In Claim 4, Plaintiff alleges that Defendant Brookhart insisted that he be returned to the prison on December 15, 2023, rather than spending the weekend at the hospital awaiting surgery as recommended by hospital staff. He further alleges this caused him pain, the delay worsened his injury, and Brookhart further prevented him from receiving care by having him transferred to Menard. Delaying care or refusing to follow the advice of a specialist can amount to deliberate indifference. *See e.g., Reck v. Wexford*, 27 F.4th 473, 483 (7th Cir. 2022) (doggedly persisting in ineffective treatment can establish deliberate indifference); *Thomas v. Martija,* 991 F.3d 763, 769 (7th Cir. 2021) (a delay, even brief, in a known need for specialist treatment, may amount to deliberate indifference); *Arnett v.*

*Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (that a prisoner received some treatment does not foreclose a claim of deliberate indifference if the treatment was blatantly inappropriate). The facts alleged are sufficient to proceed against Brookhart for alleged deliberate indifference to Plaintiff's broken arm, including allegedly refusing the recommendation that he be hospitalized until he could undergo surgery.

In Claim 5, Plaintiff theorizes that all Defendants allowed the harm that transpired to occur as retaliation for a grievance he had filed earlier in December of 2023 challenging the outcome of a disciplinary proceeding. He also adds that they may have acted because he is convicted of murdering an individual who had some connection to correctional officers. Neither of these theories provides a sufficient basis for Plaintiff to proceed on a theory of retaliation. To the extent that Plaintiff claims there was retaliation related to his underlying murder conviction, this theory is not a plausible First Amendment theory because it is not tied to protected speech. As to the theory about his grievance, he does not provide any allegations sufficient to support a causal link between the grievance and the harm he sustained.

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were

motivated by retaliation. *See e.g.*, Kidwell v. Eisenhauer, 679 F.3d 957, 965-66 (7th Cir. 2012). "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred. 'Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.*

Here, Plaintiff simply has not offered any evidence that suggests a causal link between any protected speech and the incidents that transpired on December 15, 2023. At most, he alludes to suspicious timing, but he does not explain why he believes that any of the defendants knew about his grievance from earlier in December, or what about the grievance might have caused them to act. Plaintiff also does not attribute knowledge of the grievance to the individual defendants, nor does he explain their personal role. The generic assertion that one or more defendants acted to harm me is too vague to proceed. *See e.g.*, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Plaintiff's assertions of retaliation are too speculative to proceed, and Claim 5 will be dismissed as insufficient.

Finally, Plaintiff alleges near the end of his complaint that he believes he is again in danger because he has been transferred back to Lawrence, the site of the assault. He alleges that he still faces a risk from fellow inmates and staff but does not explain if he has received new threats, if he interacts with any of the staff involved in this complaint, or if he has requested a transfer or protection of his own accord. Plaintiff's assertions are too vague to support any immediate relief. If he believes there is a present threat, he should file a freestanding motion that follows the requirements of Federal Rule of Civil Procedure 65. In the interim, the Court also notes that Plaintiff no longer appears in the

IDOC inmate locator public search tool, which may indicate he no longer faces a present threat at Lawrence.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has moved for recruited counsel (Doc. 3) and he has submitted proof of his correspondence with two entities seeking representation (Doc. 3).  Plaintiff states that he needs counsel because English is not his first language, he has trouble speaking, spelling, and understanding English, and he suffers from severe migraines and low back pain.  (Doc. 3 at 4).  There is  no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff indicates that English is not his primary language, and he has trouble corresponding in English, but his complaint was clear and easy to understand, and he does not indicate if he prepared it himself or had help.  In the complaint, he indicated that he also desired counsel because he faced an imminent danger having recently been transferred back to Lawrence where the assault occurred.  However, the prison recently informed the Court that Plaintiff had been transferred, and his name no longer appears in the Illinois Department of Corrections Inmate Locator search tool. Plaintiff's command of the English language, and his prison placement may be factors that weigh on the recruitment of counsel calculus later in this case, but for now, the Court

finds that Plaintiff is competent to proceed on his own.  The complaint and the motion for counsel were clear and easy to understand.  The next steps in this case will include the Court conducting service and defendants filing answers.  When further action is required by Plaintiff, he will receive a detailed scheduling order explaining next steps.  If Plaintiff faces difficulty managing this case on his own at later stages, he should file a new motion explaining the problems he faces.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** survives against Defendant John Doe 1, and **Claim 4** proceeds against Defendant Deanna Brookhart.  By contrast, **Claim 1** is insufficient against Defendant Piper, **Claim 3** is insufficient against John Doe 3, and **Claim 5** is insufficient against all Defendants.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Piper and John Doe 3.

The Clerk of Court is **DIRECTED** to prepare for Defendants John Doe 1 and Deanna Brookhart: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

In the Complaint, Plaintiff provided shift details and a physical description of John Doe 1. (Doc. 1 at 2). Defendant Brookhart, as the Warden of Lawrence, shall be responsible for providing responsive information about the identity of John Doe 1. The Court will issue a separate order about identifying John Doe 1 setting forth deadlines and next steps.

**IT IS SO ORDERED.**

**DATED:  September 25, 2025**

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.